UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSEPH WILLIAM BOISVERT,

   Plaintiff,

v.                                                    Case No.: 2:21-cv-35-KCD

COMMISSIONER OF SOCIAL SECURITY,

   Defendant.
_____/

## **ORDER**[1]

Joseph William Boisvert appeals the Commissioner of Social Security's final decision denying his application for a period of disability and Disability Insurance Benefits. (Doc. 1.) For the reasons below, the Commissioner's final decision is affirmed.

## **I. Background**

In July 2018, Boisvert filed an application for social security benefits. (Tr. 15, 190-97.) His application was denied initially and again upon reconsideration. He then requested further administrative review. (Tr. 15, 108, 123, 138.) A hearing was held before the assigned administrative law

---

[1] Disclaimer: Documents hyperlinked to CM/ECF are subject to PACER fees. By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

judge on April 16, 2020, during which Boisvert was represented by an attorney. (Tr. 15, 29-74.) Boisvert and a vocational expert ("VE") testified. (Tr. 15, 29-74.)

After assembling the record, the ALJ performed the five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520(a). (Tr. 16-24.)[2] First, the ALJ found Boisvert last met the insured status requirements of the Social Security Act on March 31, 2020. (Tr. 18.) The ALJ also concluded that Boisvert had not engaged in substantial gainful activity from his alleged onset date of June 23, 2018, through the date last insured. (Tr. 18.)

At step two, the ALJ found that Boisvert suffered from the following severe impairments: degenerative disc disease, degenerative joint disease, anxiety disorder, panic disorder, and ADHD. (Tr. 18.) Turning to step three, the ALJ concluded Boisvert did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18-19.)

---

[2] An individual claiming Social Security disability benefits must prove that he or she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

Based on the record presented, the ALJ found that through the date last insured, Boisvert had the RFC to perform sedentary work as defined in the Social Security regulations,[3] except that he:

> can stand and/or walk for a total of four hours during an eight-hour workday. The claimant can sit for a total of six hours during an eight-hour workday. The claimant can never climb ladders, ropes, or scaffolds, can frequently balance and stoop, and can occasionally climb ramps and stairs, kneel, crouch and crawl. The claimant is limited to performing simple SVP-2 tasks. The claimant can have occasional interaction with supervisors, coworkers and the public.

(Tr. 19-20.)

After considering the evidence, the ALJ found at step four that Boisvert was unable to perform his past relevant work as a chef. (Tr. 23.) However, considering Boisvert's age (younger individual), education, work experience, RFC, and the testimony of the VE, the ALJ concluded that there were jobs existing in significant numbers in the national economy that he could have

---

[3] The social security regulations define sedentary work to include:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

3

performed, including table worker, final assembler, and fruit sorter. (Tr. 23-24.)

The ALJ issued an unfavorable decision finding Boisvert not disabled at any time from June 23, 2018 (the alleged onset date) through March 31, 2020 (the date last insured). The Appeals Council denied Boisvert's request for review, and this action followed. (Doc. 1.)

## II. Legal Standard

Because Boisvert has exhausted his administrative remedies, the Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the factual findings are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).[4] The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner, when

---

[4] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

4

determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner. And even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## III. Discussion

**A.** *Boisvert's Shoulder Impairment*

Boisvert contends the ALJ erred in the evaluation process—first at step two by not finding Boisvert's shoulder impairment severe, and second, at step four by not including limitations caused by his shoulder impairment in the RFC determination. (Doc. 26 at 15-18.) The Commissioner argues the ALJ adequately determined that the shoulder impairment was severe at step two. (Doc. 26 at 18-19.) Further, according to the Commission, even if the shoulder impairment was not included in the list of severe impairments at step two, the error was harmless because the ALJ considered it when assessing the RFC. (Doc. 26 at 20-22.)

The Court agrees with the Commissioner. The ALJ included Boisvert's shoulder impairment at step two of the analysis when he found that Boisvert

5

suffered from degenerative joint disease, as well as in the RFC determination when he restricted Boisvert to sedentary work.

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c). The Eleventh Circuit has described this analysis "as a screening or filter to eliminate groundless claims." *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014). Important for present purposes, an ALJ is not required to identify every severe impairment. *Id.* "The finding of any severe impairment, based on either a single impairment or a combination of impairments, is enough to satisfy step two because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe." *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 902 (11th Cir. 2011).

At step four of the sequential evaluation process, the ALJ assesses a claimant's RFC and ability to do past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). RFC is defined as the most the claimant can still do despite his limitations and is based on an evaluation of all the relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1) and (a)(3); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). The task of determining a claimant's RFC and ability to work rests with

the ALJ, not a medical source. *See Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) ("Contrary to the district court's reasoning, the ALJ did not 'play doctor' in assessing Mr. Castle's RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing Mr. Castle's RFC."); *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("We note that the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors.").

Here, at step two, the ALJ found that Boisvert's degenerative disc disease and degenerative joint disease constituted severe impairments. (Tr. 18.) While the ALJ did not specifically mention shoulder pain, the impairments listed implicitly included shoulder complaints, as is evident from his discussion of the medical evidence in the RFC analysis. (Tr. 21.) Nevertheless, even if shoulder complaints were not included in the severe impairments at step two, the error was harmless because the ALJ considered Boisvert's shoulder impairments at subsequent steps.

In the RFC assessment, the ALJ specifically considered Boisvert's shoulder impairment. Referring to Boisvert's degenerative disc disease and degenerative joint disease, the ALJ noted that Boisvert "underwent numerous scans, including MRIs and X-rays, which showed cervical spondylosis, thoracic disc protrusions, surgical history with stable hardware of the right knee, and

7

right shoulder small tear supraspinatus[.]" (Tr. 21.) The ALJ also referred to a July 2, 2018, examination by Dr. Lian Jen, D.O., who found that Boisvert had decreased shoulder range of motion, and diagnosed him with a right shoulder cuff tear. (Tr. 21.) The ALJ further noted that on October 15, 2018, "claimant was seen at Iona Cannabis Clinic for continued complaints of right shoulder pain and back pain[,]" and that he "was diagnosed with chronic pain and neuropathy and prescribed an oral tincture of THC[.]" (Tr. 21.) Continuing on, the ALJ referred to a consultative examination performed by Dr. Michael Rosenberg, M.D., who noted, in regards to the shoulder impairment, that Boisvert had reduced shoulder range of motion and diagnosed mild bilateral shoulder pain. (Tr. 21.)

The ALJ also considered the opinions of Dr. Shakra Junego, M.D., and Dr. Jolita Burns, M.D., state agency consulting physicians who reviewed Boisvert's medical records. (Tr. 22, 95-105, 109-20.) They noted Boisvert's shoulder impairment and opined that he could perform sedentary exertion level work, could stand and walk for 4 hours during an 8-hour workday, could occasionally climb, balance, stoop, kneel, crouch, and crawl, but "was limited to frequently overhead reaching with the right arm[.]" (Tr. 22, 103-04, 118-19.) The ALJ found "[t]hese opinions persuasive," but still afforded "more restrictions . . . in the residual functional capacity." (Tr. 22-23.)

Boisvert states that his shoulder impairment originated with a motor vehicle accident in 2016, which was further aggravated by a fall several years later. (Doc. 26 at 16-17.) Boisvert refers to physical examinations after these incidents that "are also consistent with [his] testimony at the . . . hearing that he is right-handed and has a 'major problem' with his right shoulder in terms of reaching above his head or out in front of him." (Doc. 26 at 17.) Citing this evidence, Boisvert argues that the RFC determination does not account for his muscle weakness and limited range of motion. (Doc. 26 at 18.)

Contrary to Boisvert's contention, the ALJ considered his accident and resulting shoulder pain. (Tr. 20.) The ALJ referenced an emergency room report noting that Boisvert "appeared in no acute distress and reported should [sic] pain was a 4 on a scale of 1-10, with 10 being the worse pain." (Tr. 22.) A shoulder X-ray showed no fracture, and Boisvert "was diagnosed with shoulder pain/acute right shoulder sprain/strain and a possible rotator cuff tear . . . and was prescribed Ibuprofen." (Tr. 22.) The ALJ also referred to a medical report dated September 30, 2019, and a subsequent December 20, 2019 report, and stated:

> On September 30, 2019, the claimant went to Family Health Center to establish care. The claimant reported having chronic pain, right shoulder pain, repeated falls, dyslexia and alexia, and nicotine dependence. Due to complaints of shoulder pain an MRI was ordered for the claimant. On examination, the claimant had normal gait, stance, balance, strength,

9

> and range of motion, except for limited range of motion of both shoulders and right shoulder pain on testing. The claimant returned on December 20, 2019, complaining of continued shoulder pain. The claimant had not undergone a shoulder MRI. The claimant underwent x-rays in the office, which showed no fractures, no dislocations, no significant arthritis, and no acute changes. Physical exam showed no deformity, no erythema, and no swelling. The claimant had full shoulder flexion and external rotation. The claimant was noted as having right cuff tendinitis, underwent an injection, and was given exercises to do at home.

(Tr. 20.)

Considering all of the medical evidence, the ALJ concluded that Boisvert had the RFC to perform sedentary work, and substantial evidence supports this finding. As the ALJ discussed in his opinion, after the onset date, Boisvert was seen by Dr. Jen with complaints of right knee, back, and right shoulder pain. (Tr. 551.) Medical notes from that visit indicate "motor 4+/5 with right shoulder girdle 4-/5," and tight range of motion in the right shoulder, decreased internal rotation, and uneven and forward shoulder, and his diagnosis included right shoulder cuff tear. (Tr. 551.) A follow-up examination was consistent with these findings. (Tr. 550.)

Dr. Rosenberg later performed a consultative examination. (Tr. 633.) Boisvert's reported activities of daily living included simple cooking, cleaning counters and tables, light laundry and light shopping. (Tr. 634.) He reported being able to shower and dress himself, do childcare, and tend to orchids. (Tr

634.) As the Commissioner persuasively argues, these activities are consistent with the ALJ's determination that Boisvert is capable of a reduced range of sedentary work. (Doc. 26 at 21.) Dr. Rosenberg further noted that Boisvert needed no help changing for the exam or getting on and off the exam table, and was able to rise from a chair without difficulty. (Tr. 635.) He had pain with range of motion of bilateral shoulders, but 5/5 strength in the upper and lower extremities. (Tr. 635.)

As for Boisvert's post-accident fall that allegedly aggravated his shoulder injury, he was examined in the emergency room with complaints of leg, hip and knee pain, and a small laceration under his right eye. (Tr. 692, 696.) His symptoms were noted to be mild. (Tr. 696.) Other than pain in the right leg, extremities were grossly normal, and range of motion was intact in all extremities. (Tr. 697.) A right shoulder X-ray revealed normal findings. (Tr. 710.)

Boisvert returned to the emergency room in September 2019 with complaints of right shoulder pain after tripping over his dog. (Tr. 642.) The physical examination indicated grossly normal extremities, except for decreased range of motion in the right shoulder, pain, and tenderness. (Tr. 646.) Circulation and sensation were intact, and Compartment Syndrome exam of the affected extremity was normal. (Tr. 646.) The radiology test revealed no acute fracture or dislocation, and no joint effusion. (Tr. 647, 650.)

11

As the ALJ noted, Boisvert was discharged with a diagnosis of "acute right shoulder sprain strain fall possible rotator cuff tear," and prescribed Ibuprofen. (Tr. 642, 644, 656.)

Continuing chronologically, Boisvert was then examined by Dr. Alexander Serbanescu, M.D. (Tr. 739-46.) His examination was consistent with rotator cuff pathology. (Tr. 740.) In late 2019, Boisvert returned to Dr. Serbanescu for a follow-up visit. (Tr. 731.) His right shoulder examination showed no deformity, no erythema or swelling. (Tr. 733.) He also had full shoulder forward flexion and external rotation, and 5/5 rotator cuff strength testing in all planes. (Tr. 733.) An X-ray of the right shoulder confirmed no fracture or dislocation, no significant arthritis, and no acute bony changes. (Tr. 733. Dr. Serbanescu diagnosed right shoulder rotator cuff tendinitis. (Tr. 733.)

Based on these records, the ALJ's RFC determination that Boisvert was capable of sedentary work with some limitations is supported by substantial evidence. The ALJ appropriately addressed the evidence, including Boisvert's shoulder impairment, both before and after the September 2019 fall, and explained the reasoning for the RFC determination. While the record indeed reveals Boisvert suffered from shoulder pain and reduced range of motion at times, the RFC included limitations on his use of his arms and shoulders, including the limitation that he can lift no more than ten pounds at a time and occasionally lift or carry articles like docket files, ledgers, and small tools.

Boisvert argues the evidence supports a different conclusion, but the ALJs decision is not subject to reversal where substantial evidence supports the conclusion he reached. *See Stout v. Comm'r of Soc. Sec.*, No. 2:21-CV-164-MRM, 2022 WL 2115484, at *3 (M.D. Fla. June 13, 2022). Accordingly, the ALJ's RFC determination is supported by substantial evidence, and the Court finds no error.

### B. *Duty to Develop the Record*

Boisvert next argues the ALJ failed to develop the record. (Doc. 26 at 23.) Specifically, Boisvert claims the ALJ should have requested an additional consultative examination after his September 2019 fall, as well as a shoulder MRI that had been ordered by Dr. Serbanescu and that Boisvert did not undergo. (Doc. 26 at 23.) The Commissioner argues Boisvert bears the burden of showing his limitations, and that the ALJ had sufficient evidence in the record to enable him to make an informed decision. (Doc. 26 at 25-28.) The Court agrees with the Commissioner.

The ALJ has a basic duty to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). "Nevertheless, the claimant bears the burden of proving that he is disabled, and consequently, he is responsible for producing evidence in support of his claim." *Id.* The ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed

13

decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). "The duty is triggered, for example, when there is an ambiguity in the record or when the record is inadequate to allow for proper evaluation of the evidence." *Mishoe v. Astrue*, No. 5:08-CV-371-OC-GRJ, 2009 WL 2499073, at *7 (M.D. Fla. Aug. 14, 2009).

Further, "there must be a showing of prejudice before [the court] will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995). In evaluating the necessity for a remand, courts are "guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Id.* To establish an evidentiary gap in the record, a claimant must "identify what facts could have been submitted that would have changed the outcome." *Correa v. Colvin*, No. 8:15-CV-461-T-TGW, 2016 WL 7334642, at *4 (M.D. Fla. Mar. 18, 2016).

Here, the record contained ample evidence for the ALJ to evaluate Boisvert's shoulder impairment, including physical examinations and X-ray imaging, both before and after the September 2019 fall that Boisvert alleges exacerbated his symptoms. As discussed above, after his fall, Boisvert was examined in the emergency room. (Tr. 642-56.) Radiology revealed no acute fracture or dislocation, and he was diagnosed with acute right shoulder sprain from the fall, with possible rotator cuff tear. (Tr. 645, 650.) Days later, Boisvert

14

was examined by Dr. Serbanescu, who noted the examination was consistent with rotator cuff pathology and ordered an MRI. (Tr. 740.) Boisvert had a follow-up visit with Dr. Serbanescu. (Tr. 731.) While the record does not include MRI results, Dr. Serbanescu noted that X-ray imaging revealed no fractions or dislocations, no arthritis, and no acute bony changes. (Tr. 733.) Boisvert also underwent a Hawkins test at that time, which confirmed the diagnosis of right shoulder rotator cuff tendinitis. (Tr. 733.) And physical examinations showed no deformity, no erythema, and no swelling, full shoulder forward flexion and external rotation equal bilaterally, and 5/5 rotator cuff strength testing in all planes. (Tr. 733.) The medical record after Boisvert's September 2019 fall is consistent as to the extent of his injury and limitations, and there is no indication that an MRI was necessary to enable the ALJ to make an informed decision.

For the same reasons, Boisvert's assertion that the ALJ had a duty to order a second consultative examination and "update the record" after his September 2019 fall is also without merit. (*See* Doc. 26 at 23.) The record was fully and fairly developed, including treatment notes, objective medical testing, and Boisvert's own testimony at the hearing, to enable the ALJ to make an informed decision.

Boisvert has also not demonstrated any prejudice by identifying facts that could have changed the outcome. As the Commissioner notes, Boisvert

15

cannot rely on "hope or speculation" that "a consultative examination might produce evidence to support his claim." (Doc. 26 at 26.) Mere speculation that an additional examination might have changed the results is not sufficient to show prejudice. *See Slocumb v. Comm'r of Soc. Sec.*, No. 5:16-CV-617-OC-10PRL, 2017 WL 2889804, at *4 (M.D. Fla. May 15, 2017) ("[T]he only purported prejudice that Plaintiff points to in her brief is the lack of a consultative psychological examination . . . but it is Plaintiff's duty to show *how* the ALJ's failure to obtain a psychological examination prejudiced her, the mere lack of a consultative examination is inadequate to meet Plaintiff's burden when the record contains sufficient evidence to determine whether she is disabled.").

In sum, there are no evidentiary gaps in the record which resulted in unfairness or clear prejudice to Boisvert. The ALJ had sufficient evidence to make an informed decision regarding Boisvert's limitations. Accordingly, the ALJ did not breach his duty to fully and fairly develop the record by failing to order an MRI or an additional consultative examination.

## C.  *Consideration of Boisvert's Mental Impairments*

Finally, Boisvert claims the ALJ erred by failing to account for his non-exertional limitations in the RFC determination. (Doc. 26 at 29.) Boisvert argues the mental limitations, which the ALJ included at steps two and three of the sequential evaluation process, "in particular the limitation in

16

concentrating, persisting or maintaining pace, erode his ability to perform sedentary work such as the assembler-type of jobs that the vocational expert identified." (Doc. 26 at 30.) The Commissioner argues "[t]he ALJ was not required to include his 'mild' ratings in his RFC finding or in a hypothetical to the VE because they were not an assessment of Plaintiff's RFC[,]" and the ALJ's RFC actually did include mental limitations. (Doc. 26 at 31-32.) The Court again agrees with the Commissioner.

At step two of the sequential evaluation process, the ALJ found that Boisvert's severe impairments included anxiety disorder, panic disorder, and ADHD. (Tr. 18.) At step three, the ALJ considered the severity of Boisvert's mental impairments, singly and in combination, and concluded that they did not meet or medically equal the criteria of listing 12.06. (Tr. 18.) Specifically, the ALJ found "[i]n understanding, remembering or applying information, the claimant had a mild limitation. In interacting with others, the claimant had a moderate limitation. With regard to concentrating, persisting or maintaining pace, the claimant had a mild limitation. As for adapting or managing oneself, the claimant had experienced a mild limitation." (Tr. 19.) In support, the ALJ stated that Boisvert is the primary care giver for his 13-year-old son, he cooks, does light cleaning and laundry, goes grocery shopping, is able to shower and dress himself, cares for his dogs, tends his orchids, and socializes with friends. (Tr. 19.)

17

Based on the mild limitation in the area of concentrating, persisting, or maintaining pace, the ALJ was not required to include it the RFC assessment. *See Faircloth v. Comm'r of Soc. Sec., No. 6:21-CV-782-EJK, 2022 WL 2901218, at \*2 (M.D. Fla. July 22, 2022)* ("[A]n ALJ is not required to include mental limitations in the RFC finding merely because he identified mild mental limitations in the PRT criteria."); *see also Sprague v. Colvin, No. 8:13-CV-576-T-TGW, 2014 WL 2579629, at \*6-7 (M.D. Fla. June 9, 2014)* (concluding that the ALJ did not err in the RFC finding by omitting mild functional limitations relating to a mental impairment). As such, even if the ALJ did omit this limitation from the RFC assessment, he committed no error because he assessed it as mild at an earlier step.

However, the ALJ did consider Boisvert's mental impairments in the RFC assessment and also in his hypothetical to the VE. (Tr. 19-20.) The ALJ specifically noted that the RFC "reflects the degree of limitation I have found in the paragraph B mental function analysis." (Tr. 19.) And in formulating the RFC, the ALJ considered treatment notes and opinion evidence regarding Boisvert's symptoms. The ALJ stated:

> Regarding the claimant's anxiety disorder, panic disorder, and ADHD, the claimant was diagnosed and treated at Psychiatric Associates prior to the amended onset date (Exhibits B3F and B7F). The claimant continued treatment, returning on July 11, 2018, the claimant returned for treatment and reported "I'm fine" and continued treatment for opioid dependence,

18

> panic disorder, ADHD, generalized anxiety disorder, and panic disorder. The claimant's mental status exam was normal except for anxious mood. The claimant was continued on Xanax. The claimant returned on August 1, 2018, October 8, 2018, December 20, 2018, April 3, 2019, September 5, 2019, and February 27, 2020. (Exhibits B7F, B9F, and B13F).
>
> On September 30, 2019, while being treated at Family Health center, the claimant was diagnosed with anxiety and started on Xanax. The claimant continued treatment and do [sic] to reporting continued symptoms, the claimant's medication as [sic] adjusted on December 20, 2019. The claimant's psychiatric exams noted normal appearance and affect with euthymic mood (Exhibit B12F).

(Tr. 22.)

The ALJ relied on psychiatric findings, and noted that they were consistently normal, except for anxious mood which was being treated with Xanax. (Tr. 22.) Indeed, treatment notes from the relevant period indicate that Boisvert appeared his stated age, was cooperative, friendly, alert, oriented to person, place, time, and situation, had normal attention and concentration, good memory and insight, congruent affect with mood, organized thought process, and normal thought content. (Tr. 527-28, 533-34, 610-11, 613-14, 748-51.) His diagnoses of generalized anxiety disorder, ADHD, opioid dependence, and panic disorder remained consistent, and he continued with a Xanax prescription. (Tr. 527-34, 537-38, 610-14, 630-31, 748-51.)

19

Contrary to Boisvert's contention that the ALJ did not account for mental limitations in the hypothetical to the VE, he did by restricting Boisvert to performing simple tasks and only occasional interaction with supervisors, coworkers, and the public. (Tr. 71-72.) Based in part on these limitations, the VE testified that Boisvert could not return to his past work as a chef because "[c]ontact with people would be more than occasional." (Tr. 72.) Thus, the ALJ properly considered Boisvert's mental limitations in the RFC assessment and the hypothetical question posed to the VE. Because the ALJ's RFC determination is supported by substantial evidence, the Court finds no error on this issue.

Accordingly, it is **ORDERED:**

(1) the Commissioner's final decision is **AFFIRMED**;

(2) The Clerk shall enter judgment for the Commissioner and against Joseph William Boisvert and close the file.

**ENTERED** in Fort Myers, Florida, on September 7, 2022.

Kyle C. Dudek
United States Magistrate Judge